UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MISSOURI DEPARTMENT OF SOCIAL
SERVICES,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *et al.*,

    Defendants.

Civil Action No. 18-2587 (JEB)

**MEMORANDUM OPINION AND ORDER**

This Court has previously observed that disputes involving Medicaid's intricacies can be "significantly more difficult to describe than to decide." Cooper Hosp./Univ. Med. Ctr. v. Burwell, 179 F. Supp. 3d 31, 36 (D.D.C. 2016) (citation omitted). Having read the parties' briefs here, however, the Court does not believe that this aphorism applies with full force in this case. Indeed, to ultimately resolve the pending Cross-Motions for Summary Judgment, it will require supplemental briefing.

I.    **Background**

Plaintiff Missouri Department of Social Services seeks to amend three of its reports to the federal government detailing the State's Medicaid expenditures on "disproportionate share hospital" (DSH) payments. These are payments that states make to hospitals serving a large number of Medicaid-eligible and uninsured patients. See 42 U.S.C. § 1396a(a)(13)(A)(iv). That money helps to offset the losses such institutions generally face, since the payments they receive for furnishing specific services to individuals on Medicaid generally fall short of the cost. Reflecting Medicaid's status as a cooperative federal-state program, the federal government

generally reimburses a percentage of a state's Medicaid expenditures, including its DSH payments. See 42 U.S.C. § 1396b(a); id. § 1396r-4(f). The federal government's share is called "federal financial participation" of "FFP." 42 C.F.R. § 400.203; 45 C.F.R. § 95.4.

Missouri's problem here arises because, as the State openly acknowledges, it made an administrative mistake almost 25 years ago. In its FY 1995 report, it listed approximately $10 million worth of expenditures on the wrong line, thus underreporting its DSH spending on institutions for mental disease (IMDs). Unwittingly locking in this error, Congress passed a law in 1997 capping federal reimbursement for IMD DSH payments at FY 1995 levels. Missouri has thus been stuck with the wrong number since that time. So when this error came to light some two decades later, Missouri tried to do something about it. The State petitioned the Centers for Medicare and Medicaid Services — an agency that lies within the auspices of Defendant Department of Health and Human Services and that is responsible for administering Medicaid — to allow it to make prior-period adjustments to its FY 1995, FY 2014, and FY 2015 reports. In each year, the State seeks increased FFP for DSH payments regarding IMDs and a corresponding reduction in federal dollars for non-IMD DSH payments. Missouri seeks no adjustment for years between 1995 and 2014, although it does hope that a correction here will benefit it going forward.

CMS determined that this request ran up against two distinct but intertwined statutory provisions. First, § 1132(a) of the Social Security Act requires that any state's "claim . . . for payment" be made within a "two-year period" of the calendar quarter in which the payment was incurred. See 42 U.S.C. § 1320b-2(a). While the FY 2015 and most of the FY 2014 amendments were timely, this provision posed a problem for the State's FY 1995 adjustment. Second, as noted just above, Congress passed a law in 1997 providing a cap for IMD DSH

2

payments based on FY 1995 numbers. That is § 1923(h) of the Act. See 42 U.S.C. 1396r-4(h). Both Missouri's FY 2014 and FY 2015 expenditures exceed the FY 1995, as reported in that year. Were Missouri able to both revise its FY 1995 numbers and then use those numbers as the new baseline, however, it would be in the clear.

Relying on both of these provisions, CMS denied Missouri's request for amendment. In 2018, the Departmental Appeals Board affirmed, prompting Missouri's request for judicial review in this Court. The Board's decision proceeds by fiscal year. For FY 1995, it concluded that the State's desired adjustment constituted a "claim" subject to the two-year limitation of § 1132(a), thus rendering its request for amendment roughly two decades too late. See ECF No. 14, Attach. 5 (Board Decision) at 9–13. It thus affirmed the denial of the State's request for approximately $5 million in federal financial participation for IMD DSH payments for that year. (This payment, it should be noted, would have been offset by a decrease by the same amount for non-IMD DSH federal payments.)

Moving to the next two fiscal years, the Board agreed that the requested amendments for FY 2014 and FY 2015 were timely under § 1132(a). See Board Decision at 14. (The Court omits discussion of a nuance regarding the timeliness of the first quarter of FY 2014 amendment, which the State does not challenge. See ECF No. 15 (Pl. MSJ & Opp.) at 15 n.3.) The request for a prior-period adjustment for these years, however, ran up against the second statutory provision. Here, the Board noted that, were it to grant the request, then, per § 1923(h), the adjustments for those years would push Missouri over the limit set by the FY 1995 numbers. See Board Decision at 14–15 (noting that § 1923(h) relies on numbers reported for FY 1995). Since the Board had already determined that amendment to those 1995 numbers was not permitted under § 1132(a), Missouri could not escape its error. Id. at 14–15 ("But, as we have just

concluded, the claimed base-year increasing adjustment is unallowable because it was not timely filed in accordance with section 1132(a)."); id. at 15 (noting that CMS's "disapproval" of FY 1995 amendment under § 1132(a) "was legally valid for the reasons discussed above"). Its disallowance of the State's increasing adjustment for FY 2014 and FY 2015 thus turned on the Board's prior conclusion regarding the FY 1995 report, which constituted a sufficient reason to deny Missouri's request.

The Board declined to journey down a second road that could, it seemed to suggest, serve as an alternate basis for denying the State's request for increased FFP in FY 2014 and FY 2015. Even if the FY 1995 report could now be amended — *i.e.*, if Plaintiff could amend consistent with § 1132(a) — § 1923(h) may still put up a bar to altering the relevant cap for future years. That would be because that statutory section also provides that the cap rests on numbers reported "not later than January 1, 1997." 42 U.S.C. 1396r-4(h)(2)(B), (C). The Board gestured at but did not ultimately take up this issue. "Even if the base-year (FY 1995) adjustment had been timely made under section 1132(a)," it said, "that fact would not settle the separate issue of whether section 1923(h)" would permit Missouri to amend the cap "in order to account for the adjustment." Board Decision at 15 n.9. But it went no further and made no alternate holding.

## II.     Analysis

Here lies the puzzle on summary judgment: Defendant's arguments in its brief do not appear to track those made by the Board. HHS makes barely a mention of § 1132(a). See ECF No. 14, Attach. 3 (Def. MSJ) at 8–10; see also ECF No. 18 (Def. Reply) at 3–7. At present, the Court discerns no clear defense of the Board's conclusions regarding this statutory provision — *i.e.*, that the State's request for adjustment constitutes a "claim" under that provision and its corresponding regulations, see Board Decision at 9 — which serves as the cornerstone of the

4

Board's decision to disallow the prior-period adjustment for all three fiscal years. See In re Carvalho, 598 B.R. 356, 362 (D.D.C. 2019) (noting that it is party's obligation to "spell out [its] arguments squarely and distinctly") (quoting Raines v. U.S. Dep't of Justice, 424 F. Supp. 2d 60, 66 n.3 (D.D.C. 2006)); see also Cement Kiln Recycling Coal. v. EPA, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments.") (internal quotation marks and citation omitted). Instead, HHS focuses on the "January 1, 1997" language in § 1923(h), with several policy arguments sprinkled in. See Def. MSJ at 8–10.

This tack is perplexing for more than one reason. Right off the bat, this argument only appears to apply to fiscal years 2014 and 2015. Section 1923(h), enacted in 1997, has no bearing on the calculation of federal financial participation in DSH payments for FY 1995, to which it does not apply. As far as the Court can now tell, Defendant thus offers no meaningful argument on whether amendment to the FY 1995 report is permissible for the purpose of determining the federal government's contribution to DSH payments for IMDs in that year. This inquiry is governed — at least as the Board described it and as Missouri appears to agree, see Board Decision at 8 — solely by § 1132(a). And if HHS does not defend the disallowance of amendment to FY 1995, then the dominoes would appear to fall for FY 2014 and FY 2015, since the Board's decision on those years is directly predicated on its conclusion regarding FY 1995. See Board Decision at 14–15.

Turning to those latter two years, HHS's argument appears to rest on the alternate ground — mentioned above — that the Board raises in a footnote. It argues in its briefing here that § 1923(h) places its own bar on amending base-year numbers, since one of the cap's prongs refers to reports made "not later than January 1, 1997." Def. MSJ at 8–10. The Court does not

rule out the possibility that CMS could have reasoned along these lines. But it did not. Instead, the Board based its denial of the State's request for FFP in FY 2014 and FY 2015 squarely on its earlier decision that the State's time to amend its base-year numbers had long run out under § 1132(a). See Board Decision at 14–15. Its reference to § 1923(h) served the limited purpose of pointing out that this provision relies on the reported FY 1995 numbers, which the Board had already decided could no longer be amended. Id. Not once in the Board's lengthy analysis does it mention the phrase "January 1, 1997" or, apart from the footnote cited above, even hint at any time bar within § 1923(h). Id. at 8–15.

This may be a problem for HHS. It is a tenet of administrative law that a Court can only sustain an agency's decision on the ground offered by the agency. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency."). The federal government's brief here seems to urge an alternate route to affirming the agency's conclusion — one upon which the agency did not embark.

This circumstance puts the Court in an unusual position. As it appears now, HHS may have neglected to defend the only rationale offered by the agency below. If the Court were to disregard that rationale, nothing is left of the Board's decision. But if the Court were to rule for Plaintiff based on this possible gap in HHS's brief, this, too, would be an odd result. Ruling against the federal government in an Administrative Procedure Act case generally results in a remand to the agency. Here, however, so ruling based on forfeiture would identify no shortcoming in the agency's rationale, leaving no instructions for remand except to run once again around the hamster wheel. Even if the Court, recognizing that it has identified no defect in the agency's decision, were to remand without vacatur — a course that can be appropriate where

6

the deficiency in agency action appears to be easily cured — it is not clear with what instruction it would leave HHS.

All that said, Defendant's sparse brief leaves the Court with some doubt about the precise contours of its intended argument. The Court would also like to hear more from the parties on forfeiture and the appropriate remedy, if any, given the oddities laid out above. It will therefore require supplemental briefing. In this briefing, Defendant must first explain whether it intends to defend the Board's § 1132(a) conclusion with respect to Missouri's requested adjustment to its FY 1995 report. If so, it must then offer argument supporting its position. If HHS does take that route, it must also explain why those arguments are not forfeited, or, in the alternative, why the Court should excuse any forfeiture. Finally, the Court will also require Defendant to explain — if the Court were to determine that Defendant has forfeited the only rationale offered by the Board — what the proper remedy would be.

Missouri will then have an opportunity to respond. While the Court leaves the precise contours of this response up to the State, it will require a position on the consequence of forfeiture. It would be especially helpful if such analysis took into account this case's status as review of agency action.

## III. Conclusion

For these reasons, the Court ORDERS that:

1. Defendant shall file a supplemental brief addressing the issues described above by August 27, 2019; and

2. Plaintiff shall file any response by September 10, 2019.

IT IS SO ORDERED.

                                                                                              /s/ *James E. Boasberg*
                                                                                              JAMES E. BOASBERG
                                                                                              United States District Judge

Date:  August 13, 2019