| | |
|---|---|
| **MISSOURI DEPARTMENT OF SOCIAL SERVICES,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 18-2587 (JEB)** |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Aided by the parties' supplemental briefing, the Court returns to the dispute between Missouri and the Department of Health and Human Services over whether the State can remediate an accounting error it first committed over twenty years ago. Specifically, Missouri hopes to correct the FY 1995, 2014, and 2015 Medicaid reports that it submitted to the agency — modifications that will allow for a present-day increase in its federal reimbursement for a subcategory of healthcare-related expenditures. HHS, for its part, rejoins that the Social Security Act prohibits Missouri from amending these reports. The Court, however, need not decide the merits of this accounting dispute. The Government has forfeited the only argument on which this Court could base a ruling in its favor and appears to have instead embraced a new rationale for the agency's decision, one not relied upon by the agency in the first instance. Given this Kafkaesque reality, the Court remands the matter to the agency; it will then wait to see the basis of a future administrative decision and what the Government will thereafter defend.

## I.    Background and Procedural History

The Court has already described the issues presented by this case in its prior Opinion. See Missouri Dep't of Soc. Servs. v. HHS, 2019 WL 3802945, at *1–2 (D.D.C. Aug. 13, 2019). Briefly, "Medicaid is a cooperative federal-state program that provides medical assistance to certain limited categories of low-income persons and other individuals who face serious financial burdens in paying for needed medical care." Cooper Hosp. / Univ. Med. Ctr. v. Burwell, 179 F. Supp. 3d 31, 37 (D.D.C. 2016); see also 42 U.S.C. § 1396-1 (Title XIX of the Social Security Act, commonly known as "Medicaid"). Like all such "cooperative" programs, Medicaid has generated some wrangling between the federal government and the states over the reimbursement amounts provided by the former to the latter. This is one such dispute.

At issue here are the federal government's responsibilities under Medicaid for Missouri's payments to institutions for mental disease (IMD) that qualify as disproportionate share hospitals (DSH), which the Act defines as hospitals that "serve a disproportionate number of low-income patients." 42 U.S.C. § 1396a(a)(13)(A)(iv). Missouri asserts that in 1995 it mistakenly reported about $10 million in payments made to IMD DSHs as expenditures made to non-IMD DSHs. This error was of great significance because Congress later capped federal reimbursement for IMD DSH payments using a formula that is based on the 1995 spending amounts as reported by each state. See Missouri Dep't of Soc. Servs., 2019 WL 3802945, at *2 (citing 42 U.S.C. § 1396r-4(h)). Upon discovering this mistake, Missouri sought in 2016 to correct its immortalized accounting error by resubmitting its FY 1995 report to reflect the "correct" expenditure totals. Because it was too late to amend most other reports in time to receive additional federal reimbursement, Missouri also hoped to correct only its FY 2014 and FY 2015 reports. (Of course, changes to the FY 1995 numbers would benefit the State going forward as well.) In any

event, Missouri therefore petitioned the Centers for Medicare and Medicaid Services (the agency within HHS responsible for administering Medicaid) to make prior-period adjustments to those three reports. CMS objected to these changes and disallowed Missouri's attempted adjustments. The State then appealed to the Departmental Appeals Board.

The Board affirmed CMS's disallowance of Missouri's attempted adjustments, relying on two interlocking provisions of the Social Security Act. First, § 1132(a) of the Act mandates that "any <u>claim</u> by a State for payment" be "filed . . . within [a] two-year period" of the calendar quarter in which the payment was made. <u>See</u> 42 U.S.C. § 1320b-2(A) (emphasis added). Crucially, the Board determined that Missouri's revised reports qualify as "claims" under the Act, holding that "a prior-period adjustment that corrects an expenditure reporting error constitutes a claim when it increases the amount of [Federal Financial Participation] sought with respect to a specific expenditure or category of expenditures." ECF No. 14 (Def. MTD), Exh. 5 (Board Decision) at 10. The Board accordingly affirmed CMS's determination that Missouri's proposed amendments to the FY 1995 report were untimely, given that far more than two years had passed since those expenses were incurred. <u>Id.</u> at 13. With the FY 1995 report disposed of, the Board turned to the FY 2014 and 2015 reports. As noted above, § 1923(h) of the Act sets a ceiling for IMD DSH payments based on FY 1995 expenditures. <u>See</u> 42 U.S.C. § 1396r-4(h). As the Board noted — and as Missouri concedes — the State's proposed FY 2014 and FY 2015 reports result in a request for federal reimbursement that exceeds the limits established by § 1923(h). <u>See</u> Board Decision at 14–15. In other words, if Missouri cannot amend the FY 1995 report to reflect the §10 million accounting error, § 1923(h) seems to stand in the way of its revising reports for future years in such a fashion.

Of relevance here, the Board's decision also briefly reflected on a path not taken in its denial of Missouri's appeal. It noted that even if Missouri could amend the FY 1995 report, a separate part of § 1923(h), which caps Federal Financial Participation pursuant to a formula based on numbers reported "not later than January 1, 1997," <u>might</u> provide an independent barrier to the State's revising the FY 2014 and 2015 reports now. <u>See</u> Board Decision at 15 n.9. This is because Missouri's amendments would have occurred after January 1, 1997. The Board, however, expressly declined to decide that question. <u>Id.</u> Instead, it grounded its determination entirely on its conclusion that § 1132(a)'s two-year time bar precluded Missouri's proposed adjustment to the FY 1995 report, a decision that, in turn, prevented Missouri from revising any reports going forward. The critical conclusion reached by the Board — the foundation without which the entire edifice would crumble — was that Missouri's FY 1995 report qualified as a "claim" under § 1132(a) and was therefore untimely.

Not so easily deterred, Missouri challenged the Board's decision in this Court, and Defendants moved to dismiss or, in the alternative, for summary judgment. Their submissions, however, left the Court unclear about the aspects of the Board's decision that HHS intended to defend. Oddly, the Government focused its briefing entirely on § 1923(h) of the Act, despite the fact that the Board's decision rests on its determination that Missouri's amended reports qualify as "claims" under § 1132(a). Puzzled by this litigation strategy, the Court ordered supplemental briefing, urging Defendants to set forth their position and explain how their failure to do so clearly in their opening salvo did not forfeit their opportunity to defend the Board's position. <u>See Missouri Dep't. of Soc. Servs.</u>, 2019 WL 3802945, at *3–4. Armed with Defendants' supplemental brief and Missouri's response, the Court is now primed to proceed.

## II.     Legal Standard

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness."  FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  Agency action is arbitrary and capricious if, for example, the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

In other words, an agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Id.  (internal quotation marks omitted) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)).  Courts, accordingly, "do not defer to the agency's conclusory or unsupported suppositions."  United Techs. Corp. v. Dep't of Def., 601 F.3d 557, 562 (D.C. Cir. 2010) (quoting McDonnell Douglas Corp. v. Dep't of the Air Force, 375 F.3d 1182, 1187 (D.C. Cir. 2004)).  Furthermore, "a reviewing court . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency."  SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).  "[A]gency 'litigating positions' are not entitled to deference when they are merely [agency] counsel's '*post hoc* rationalizations' for agency action, advanced for the first time in the reviewing court."  Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 156 (1991) (internal quotation marks omitted).

## III.  Analysis

After reviewing the Board's decision and the Government's submissions, the Court must determine both whether forfeiture exists here and, if so, what remedy should obtain.  It takes the issues one at a time.

### A.  Forfeiture

The principle of forfeiture stems from the basic nature of our adversary system, which "is designed around the premise that parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief."  Greenlaw v. United States, 554 U.S. 237, 244 (2008) (internal quotation marks and citation omitted).  "Forfeiture" is the failure to make the timely assertion of a right, as distinct from "waiver," which is the intentional relinquishment or abandonment of a known right.  See United States v. Olano, 507 U.S. 725, 733 (1993).  While courts may exercise their discretion in exceptional circumstances to consider forfeited arguments, they may not review arguments that have been waived.  Id.  As the Supreme Court has explained, the "reason for the [waiver and forfeiture] rules is not that litigation is a game, like golf, with arbitrary rules to test the skill of the players.  Rather, litigation is a 'winnowing process,' and the procedures for preserving or waiving issues are part of the machinery by which courts narrow what remains to be decided."  Exxon Shipping Co. v. Baker, 554 U.S. 471, 487 n.6 (2008) (internal quotation marks and citation omitted).

As the above discussion indicates, courts "rely on the parties to frame the issues for decision," particularly where the "party" is "the United States, the richest, most powerful, and best represented litigant."  Greenlaw, 554 U.S. at 244 (internal citation and quotation marks omitted).  Counsel for the United States, moreover, has substantially less room to maneuver in its "framing" of the issues where it defends an agency determination because, as noted above, courts

can "neither supply [their] own reasoning for the agency decision, nor consider the agency's post-hoc rationalizations." ANR Storage Co. v. FERC, 904 F.3d 1020, 1024 (D.C. Cir. 2018) (internal citation and quotation marks omitted). Rather, a Court can sustain an agency's decision only "on the grounds upon which th[e] agency acted." Chenery, 332 U.S. at 196.

The Government, however, declined to defend — and thereby forfeited — that ground. As explained above, HHS's decision depended on one conclusion: that Missouri's revised FY 1995 report constituted a "claim" under § 1132(a) of the Social Security Act and was therefore time barred by that same provision. The FY 2014 and 2015 reports thus fall by the wayside as well. In order for the Court to hold that the agency's disallowance of Missouri's proposed amended reports was not "arbitrary and capricious," it would have to affirm that particular determination. Yet, the agency's Motion to Dismiss mentions § 1132(a) merely in a footnote and then only to suggest Congress's purpose in enacting that provision. See MTD at 8 n.6. In none of its submissions to the Court do Defendants "squarely" address the core question presented by this case: whether Missouri's revised Medicaid reports qualify as "claims" under § 1132(a). See In re Carvalho, 598 B.R. 356, 362 (D.D.C. 2019) (stating party's obligation to "spell out [its] arguments squarely and distinctly"). Instead, Defendants devote their submissions to arguing that § 1923(h) bars all of Missouri's proposed–revised reports, the ground on which the agency expressly declined to rest its decision. See ECF No. 23 (Def. Supp. Br.) at 1 (conceding that Defendants' submissions "focused primarily on section 1923(h)").

The Court, as a result, finds that HHS has forfeited any defense of the Board's interpretation of § 1132(a), and there are no "exceptional circumstances" here that would favor considering the issue on the merits. See Global Tel*Link v. FCC, 866 F.3d 397, 408 (D.C. Cir. 2017) ("[I]t would make no sense for this court to determine whether the disputed agency

positions advanced . . . warrant <u>Chevron</u> deference when the agency has abandoned those positions."). As the D.C. Circuit has instructed, "[A] litigant does not properly raise an issue by addressing it in a cursory fashion with only bare bones arguments." <u>Cement Kiln Recycling Coal. v. EPA</u>, 255 F.3d 855, 869 (D.C. Cir. 2001) (internal quotation marks omitted). The Government's nonexistent defense of the actual rationale provided by the agency thus deserves no review by this Court. Whether Defendants' arguments regarding § 1923(h) are attractive or not, an agency's decision "must be measured by what [it] did, not by what it might have done." <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 93–94 (1943). Therefore, it appears that nothing is left of the Board's decision for the Court to review at this time.

B. <u>Remedy</u>

The issue most forcefully contested by the parties in their supplemental briefing is not whether the Government forfeited any defense of the agency's rationale, but rather the proper remedy for such forfeiture. For their part, Defendants continue their migration away from the rationale underlying the Board's decision and toward a new justification predicated entirely on § 1923(h) of the Social Security Act. <u>See</u> Def. Supp. Br. at 2 ("The Board was plainly aware that requests for DSH reimbursements . . . would be limited by . . . section 1923(h)."). The Government argues that the "appropriate remedy" here would therefore be "to remand the matter to the Board for a full determination on the operation of the interrelated time bars of [§§] 1132(a) and 1923(h)." <u>Id.</u> at 4. Missouri, on the other hand, contends that the agency cannot revive an argument the Government subsequently forfeited in this Court. According to the State, the Court must vacate the Board's decision, and the agency should be able to consider on remand only whether § 1923(h) bars Plaintiff's submission of the revised reports.

The Court is sympathetic to Missouri's concerns, but ultimately believes that the unique circumstances of this case favor remand without vacatur of the Board's decision. It is true that "[b]oth the Supreme Court and the D.C. Circuit Court have held that remand, along with vacatur is the presumptively appropriate remedy for a violation of the APA." Sierra Club v. Van Antwerp, 719 F. Supp. 2d 77, 78 (D.D.C. 2010). The Court, however, has not yet reached the merits of Missouri's APA claim. A remand here will serve the limited purpose of allowing the Board to clarify its position, which the Government may ultimately defend in this Court. Artificially constraining the agency in arriving at that position would serve no purpose.

The Court will therefore construe Defendants' supplemental briefing as a request for a voluntary remand, and it will permit the Board to consider the interrelation between §§ 1132(a) and 1923(h). The Court grants that request with the understanding that the agency intends to, at the very least, reconsider the ground on which it rested its decision in light of the Government's subsequent litigation strategy. See Am. Hawaii Cruises v. Skinner, 893 F.2d 1400, 1401 (D.C. Cir. 1990) (voluntary remand of Coast Guard decision granted to allow "reconsideration of that agency's ruling"); see also Limnia, Inc. v. U.S. Dep't. of Energy, 857 F.3d 379, 387 (D.C. Cir. 2017) (noting that an agency need not "confess error or impropriety in order to obtain a voluntary remand. But the agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge."). In other words, the agency on remand should address whether § 1923(h) standing alone bars Missouri from amending the FY 2014 and 2015 reports; after all, the Government appears to have fully embraced that justification in this Court. HHS may also consider the interrelation between §§ 1132(a) and 1923(h). Provided with a revised decision from the Board, the

Government may decide if and how to defend the agency's rationale for that decision, and the Court can then resolve this dispute.

## IV.    Conclusion

For these reasons, the Court will remand without vacatur to the agency for a determination as to whether §§ 1132(a) and 1923(h) of the Social Security Act prohibit Missouri from amending the FY 1995, 2014, and 2015 reports.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 26, 2019